We will hear oral argument in the matter of Martinez-Hernandez versus the Attorney General of the United States Mr. Sachs. Good afternoon judges I would like to reserve five minutes for rebuttal and first I would like to acknowledge also the presence of two very important people in this case who Sandra. Good afternoon judges. No one in this courtroom including members of this court, members of the gallery, my colleague from the government, if they were standing at petitioner's shoes would risk going back to Guatemala. They wouldn't risk it because their fate in Guatemala as petitioners fate in understand that that is the position of the petitioner from your brief on his behalf. Could we start with the asylum claim? Yes. And could we start with respect to that claim by hearing your argument as to how Mr. Martinez can justify the time it took well over the one-year statutory period to bring that particular claim? Yes your honor happy to address that. The short answer to the question is that his fear-based claim was exacerbated by a particular fact most particular fact and that is the deportation of Leonidas Alarcón in the winter actually in October of 2017. Prior to that time going back to 2012 Well you have to show he has to show change circumstances. Right. So how I mean Alarcón goes back he is how does that change circumstances? There's still a cartel there. Guerra Nova is gone dead but but Alarcón goes back maybe takes his place maybe takes a place in the ranks. How is that a change of any Well your honor Alarcón was not just gone and deported he was gone and deported based in part on cooperation given to the FBI by petitioner and his sister Myra so that and Alarcón's the cooperation of my petitioner became known to the cartel and that's really been uncontroverted here all the factual assertions in my in my clients testimony. You're still not answering my to how this changes the equation in any way how how has it heightened the risk that concerns Mr. Martinez if he were to return? Well your honor it's a known fact and part of this record that cooperation against the cartel is viewed as I'm still on changed circumstances. Well the circumstance that changes is that members of the cartel learned according to Myra's testimony and it's an intensification of an existing issue your honor. That that is not however the intensification position however is not a part of this court's jurisprudence is it? Well your honor I it's a pre-existing threat. Other circuits have held that. That's correct specifically the Fourth Circuit and I guess I'd say that it fits right into the model of well-founded fear. Yes sir? Do you have to meet the do you have to meet the one-year rule the the BIA in affirming the IJ is unclear at best as to whether it relies on that and aren't we confined to only the record the final decision of the agency which is the BIA they dropped footnote one footnote one says as an alternative the IJ reached two issues the one-year rule which he reaches very cogently I might add I I concur with judgment it's very cogent reasoning but the BIA didn't adopt it. That's correct. The BIA didn't adopt it can we can only review what the BIA did right? It is true your honor and in fact that was a kind of a murky situation for us with respect to presenting we presented it out of abundance of caution and we would still rely on the fact I agree with the court procedurally it's unclear exactly where the status of it and I don't think my and my colleague your colleague says in footnote two that she's not relying on it that that's correct that is correct but the but the the one year issue just before I move on to the other issues in the case is I think the the theory that a pre-existing threat that becomes exacerbated by an objective fact in the record qualifies an exception and especially here. You can't do that under Chenery. Your honor. He has to rule for you on something that is not before us because the BIA as Judge Phipps just indicated in footnote one the BIA specifically said they're not ruling on the timeliness issue they're going to the merits so all that's before us now are the merits. Very well. And on the merits I guess your case really rests on Alarcon because of what the chief said about Garanova. He's gone he's not a problem but as I understand your theory Alarcon has stepped into Garanova's shoes and he's in charge of the cartel. Well that's just not my theory that's the fact that were presented below I mean the expert who was credible you know compared it to a situation when you know Lee Iacocca was not around and they're still selling Chrysler's and in fact the threats because it was a pre-existing threat against the family intensified so that they don't forgive and forget. So what you're telling me and what you're telling us as I understand it is that there was testimony found credible that Guatemalan gangs punish whole families based on perceived slights or injuries by one family member that's that that's that's the linchpin of your case right? Well there's not not solely your honor because that's very important your case we can at least agree that you you need may not need but but you're relying heavily on that correlation that your expert draws. Guatemalan gangs punish whole families based on the actions of one family member right? I don't think it paints that broad your honor I don't think it paints that broad and I wouldn't I would ask the court to consider the fact that my client's status as a known informant which is a social group that we asked the court. Well that's that wasn't decided by the BIA either that that was another issue. But that was another issue that that the IJ very cogently articulated a reason and the BIA didn't decide so we can't we can't reach that issue. Well I disagree judge that that's I disagree your honor that that's before the court to know it that's a matter of law that if the BIA chose not to address it the IJ said under matter of MEVG that there wasn't sufficient distinction to and to the info the informant social group. We don't review the IJ when the BIA writes its own opinion the BIA addressed the merits so we can only I guess what I'm remand. I guess we can't give you a victory right? Your honor I'd say that you can do more than just a simple remand in the case. The court can. Under Chenery. The court can decide the BIA addressed they adopted certain findings of the IJ and addressed them minimally. With respect to the expert they ignored the expert fully and with respect to the informant issue they just they just adopted. So the court is in the in the seat of in the view of. They did not adopt the the there is nothing in the IJ opinion that says that perceived informants constitute a cognizable social group. The BIA never did that and Judge Hardiman's right. We're bound by the Supreme Court in Chenery that says we can reach a decision only for the reasons that the agency reached. Anything else we're overstepping our bounds it feels like separation of powers. Courts filling in for administrative agencies. That's not our role. I would say to the and the decision of the IJ which was very extensive with he addressed he addressed that. Let's stop right there. Sure. It was very extensive. I agree. In more than 17 years I have seen very few detailed opinions from IJs as detailed as this one and yet you've raised a due process issue suggesting that he failed to engage with the record sufficiently. Your Honor I would term that to be that it's a substantial a substantial evidence challenge. Do you withdraw? Yes. Thank you. Yes I would say it's a substantial evidence challenge because although it's an extensive recitation of the facts and frankly the facts read as if the case is going to go the other way for towards petitioner. This is one of those situations where the the the key fact that he that the one of the key facts that the IJ relies upon is that my client's activities were not known to the cartel and that's just a disregard and we lay it out in our brief at between page 25 to 40 and also in the record in with regard to Myra's testimony with regard to petitioner's testimony it's in the record at 400 and I urge the court to look at the record of Maynard's affidavit, Myra's affidavit at 678 to 693, Sandra's affidavit at 567 to 607 and my client's affidavit from 779 to 783 which lays out very extensively why it is that cartel members the fact that cartel members are aware of his activities he's a known informant and he it takes him out of the analysis and puts him squarely within this court's ruling in SERL. There's distinction here because he's not before us the SERL questions just not before us the the IJ reached that to be up but the BIA didn't and the IJ said it wasn't squarely before SERL it reached the exact opposite result. Well your honor how else can you attain review of an agency decision if that the BA it shouldn't be precluded this court shouldn't be precluded from examining this record for a legal issue. Well I'm against the wind on this one because the BIA's failure might mirror to your client's benefit not not the other way around. Well you have reserved five minutes for rebuttal and we'll have you back on I just like to address two two preliminary issues up front. Let's start though with what is the questions have suggested is and ought to be the starting point. What are we reviewing here? Are we reviewing only the BIA's decision? Yes the court is bound to the BIA decision and in this case the board although there was a very thorough immigration judge decision that was quite extensive and there are many different issues decided there the board only looked at a couple of very specific findings and you could as Judge Pipps noted on the footnote on page one of the board's decision the board makes clear that although the immigration judge made a finding with regard to the one-year bar the board went forward and made findings on the merits of the case and did not adopt that finding. On page three of the board's decision it's pretty clear that the board is really relying essentially on the nexus findings with regard to past persecution and well-founded fear of future persecution and although there is an extensive finding again the immigration judge had on the question of whether an informant can establish a particular social group here the board basically made one finding with regard to the petitioner status as an informant finding that we agree with the immigration judge that there's insufficient evidence in the record to indicate the cartel is aware of the respondents activity as an informant. And that seems to be directly contrary to the record because there was a finding of credibility by the IJ and the Guatemalan community but actually a group of people from Concepcion Las Minas they know each other they talk at the barbershop and Alarcón has been sent back to Guatemala and the two witnesses testified that Alarcón is essentially waiting for Martinez when he gets back. I didn't see anything in the record to essentially that as the board noted and the immigration found in the decision that although there was testimony from the petitioner and Mayra regarding what Alarcón may know that essentially their testimony is based on speculation. It's not based on speculation. Whose speculation? It sounds like what they're saying is it's a very clear chain of events by witnesses found to be credible. Petitioner statement that a barber told a friend in Guatemala who told Alarcón that the petitioner was the informant. Petitioner was found credible. Another one, petitioner received a death threat from Alarcón through his uncle. IJ found petitioner credible. That finding was upheld. Petitioner's sister indicates the whole cartel knows about petitioner's informant activities as in waiting in Guatemala to kill petitioner. And that's speculative? Those three combined are now speculative? Well, with all due respect, your honor, in the case of Chavarria versus González, this court found that although threats can be both sinister and credible, if they're not both highly imminent and concrete, they're not... The IJ needs to say that. The IJ could have in any number of ways supported the argument you are now making. The IJ could have said, I find petitioner's testimony self-serving. I find it incredible. I think he and his sister are exaggerating. Could have just said what you said about imminence. Could have done any number of things to undermine that testimony. But I don't see anything put in the record to undermine that. What can you point to in the record to undermine that testimony? The finding of the immigration judge? I think that essentially the immigration judge's finding with regard to Alarcon was that there just... there wasn't enough detail. There wasn't specific enough. Let's stop there, Ms. Nardone. Because what we have from the IJ is a broad determination of credibility of the witnesses who testified. Yes. Is that correct? Mm-hmm. And the witnesses testified, those who testified before him, testified to what? As I read the record, and I did, I saw what I perceived as numerous instances even of layered There's nothing specific. No one's actually... for example, although really there's... this is a communication that was allegedly gone through the barber that went to a person then went to another person in Guatemala, is my understanding of the threat. And there was never actually a threat. The only thing that was supposedly relayed to anyone, to Alarcon, was the fact that someone was inquiring about him. There was never any threat relayed back from Alarcon. And there was absolutely no testimony given that there was a threat relayed back. So it sounds to me, though, that if this is layered hearsay, which it is, but what that would suggest is that this circuit has a very elaborate pattern, a three-step abdullahi pattern articulated by the chief in Boci, the case, where it says if further evidence is then notice must be given by the IJ of what that corroboration is. And so it seems to me that we have testimony that could be credible on its own. If there's any need to do outside corroboration, then the circuit has a test that says this is how to do it. It just had to be flagged by the IJ. So why isn't a remand for corroboration of this testimony by the uncle, by others, completely appropriate? That would take layers out of the hearsay, tighten the nexus, and make it better. You could have a better decision, and who knows, maybe even the BIA would address this cognizable social group this time around in a way that would give you an additional grounds to prevail. Your Honor, it's a governance position that that remand is not warranted in this case. The petitioner had counsel. He had opportunity to bring this evidence to bear. There wasn't the type of evidence even presented in front of the immigration judge for the immigration judge to further suggest that he corroborate these claims, because the only thing that was ever testified to is that perhaps Alarcon learned of this fact. There's no specific threat that was even heard or testified to by any of the witnesses in the case. It's the government's position that this is secondhand attenuated threats, and there's nothing specific or concrete. And under this court's precedent in Cheveria, it's not substantial evidence of a well-founded fear of future persecution. And if the court finds that on this record, it's simply not substantial evidence, then it needs to support the agency's finding here. I mean, hearsay and layers of hearsay can still defeat a substantial evidence finding, right? There's no rule against the admission of hearsay at the administrative level, right? No, there's not. But evidence needs to be compelling, and the evidence needs to be specific of the threats. You're not arguing, and I realize I raised the issue, introduced the issue, but you're not arguing that there's any error here in the admission of hearsay or any requirement that hearsay be entirely rejected. I would understand your position to be that the IJ's role is institutionally to give such weight to whatever evidence is admitted as he chooses to give, and the hearsay nature of that testimony may have an appropriate, may appropriately have some impact upon the weight that a fact-finder ultimately gives it. That's correct, Your Honor. The immigration judge is generally accorded substantial discretion with regard to how weight is accorded in a case, and in this case, you know, it's clear that the agency gave adequate consideration to all the evidence in the case and accorded weight as it saw fit, and it's the government's position that substantial evidence supports those findings. Did the IJ say anything to undermine the accuracy or the weight of the testimony about Alarcon's knowledge of Martinez's case based on the lack of detail and specifics with regard to those threats? Okay. Can you address relocation? Is that an issue here? I noted that Martinez's then-fiancé, Marlon Jurado, was pregnant with their son and they relocated to I don't think relocation was a finding of the board. What about the, I don't recall whether the IJ, I don't recall the IJ specifically addressing it. I don't think so, but I think ultimately the question of a well-founded fear of future persecution. Importantly, I think what the court, what the government would like the court to focus on is with regard to family membership, it's the petitioner's, the threat to the petitioner's family essentially has dissolved since. Well, that's what we're here, I think, to talk about. If the petitioner had to hang his hat on what Garanova was going to do, the petitioner is going to lose. Right. But as I understand the argument, he's got a new problem. The new problem is Alarcon. With regard to him. That would seem to be a decent, at least, argument that a remand is required for a full hearing to learn about exactly what Alarcon is doing. I don't know how active he is. All we've got is very thin testimony that he has replaced his cousin, Garanova, as the head of this cartel. There's plenty of evidence in the record to show that Garanova was up to some pretty gruesome stuff. We have a murder. We have an being gunned down by, who knows, a rival cartel or paramilitary. Who knows, right? So, I mean, the record is full of gruesome violence, but we don't understand at this point what Alarcon's connection to any of this is, do we? Well, with all due respect, Your Honor, it's the government's position that the petitioner had an opportunity to present this evidence, and both Meira and petitioner testified in the record that there hadn't been any threats to the family since the time that Sondra, I think, returned, at least since Garanova's been deceased. There hasn't been any threats to the family living in Guatemala since she could last remember. As a matter of fact, Meira testified she couldn't remember the last time there was a threat to the family, and that's in the record at page 405 and 406, and both Meira and petitioner testified that there had been no threats since around 2012-2013. So, it's been quite some time now that the family's been living there without any threats or any problems. It's not as if they're actively getting pursued, or that there's any indication that there's any kind of active pursuit against these people that are currently still residing in Guatemala. But none of those people, is there the allegation or informants against Alarcón? Right, but there also has not been... I mean, if confidential informant is somehow a cognizable social group, which isn't really for us to decide right now apparently, so taking that as a given, it seems that there's a threat against a member of a cognizable social group that his family members would not be a member of. So, disproving threats against them disproves nothing. Yeah, I understand. If there's still a threat based on the informant element, however, again, petitioner was given an opportunity to present that evidence. He was represented by counsel. Well, I think what Mr. Sachs is going to tell us, they had an opportunity and they had two people testify about it, and those two people, the petitioner and his sister, were found credible. And if something more was required, then they were supposed to be put on notice that, look, you better bring some documents or something to show that Alarcón is active as a cartel leader in the area. Well, I mean, they were, again, I guess I argued earlier, because there wasn't anything specific or concrete offered up during their testimony with regard to any actual threats coming from Guatemala, substantial evidence supports the agency's finding here that it's simply not specific, concrete, highly imminent types of threats that are compelling a finding. Where in the opinion did the IJ say that? The reason I ask is because the I, I think it was within the IJ's prerogative to say that, but I don't recall the IJ saying it. If the IJ did say it, then I think the IJ has to engage with what that rationale means juxtaposed to a finding of credible testimony by the two witnesses. Well, on page 20, the immigration judge... What page of the appendix is that? Oh, I'm sorry, it's page 149. 149? The immigration judge says that while Respondent and Mayor indicated Respondent cooperated with the FBI... I'm sorry, which paragraph is that? I'm sorry, it's the first full paragraph on the top of that page. Okay. And he's now known by the cartel members to be an informant. The record fails to contain any objective evidence that the cartel members understand Respondent to have been an informant and now seek revenge on that account. Respondent's testimony in this regard was only that he believes Alarcon is aware because the Barbara Respondent's community told a friend Respondent was seeking information about him, and that friend relayed this to Alarcon. So this is second threats removed for two people. The court also notes that there is little in the record to even corroborate the extent to which Respondent cooperated with the FBI. I'm sorry, I'm having trouble finding this. What page in the opinion... Oh, I'm sorry, is it 149? It's 118. It's 118 of the appendix. Oh, is it? I'm sorry, I guess I have the wrong... It's 20 of the... 20 of the IJ's opinion, labeled A29. It's the top paragraph on that page. Page 20 of the IJ's opinion. Correct, yeah. Okay, and I'm sorry, you went through that a little quickly. Yeah, sorry, it starts with further. Could you take us through that again? So the first full paragraph beginning with the word further? Further, while both Respondent and Mayra indicated that Respondent cooperated with the FBI and ICE and is now known by cartel members to be an informant, the record fails to contain any objective evidence that the cartel members understand Respondent to have been an informant and now seek revenge on this account. Respondent's testimony in this regard was only that he believes Alarcon is aware because the barber in Respondent's community told a friend, Respondent was seeking information about him, and the friend relayed this to Alarcon. The court also notes that there is little in the record to even corroborate the extent of Respondent's cooperation with the FBI. Without further evidence to substantiate Respondent's claim that he has an objectively reasonable fear, the court cannot find that Respondent has met this burden in demonstrating that he has a well-founded fear of future persecution. If there's a problem with corroboration, isn't the answer to do the Abdullahi process and say, hey, you know, I see your evidence. I find you credible. I might not find every declarant in the hearsay chain credible. You're credible, but not everyone is. Therefore, I notify you. The IJ would do that and give a hearing, give an opportunity to present corroborating evidence as opposed to just shutting the door and saying nothing. Doesn't our president compel that? I mean, isn't that Abdullahi, Balanga says it, Vosey says it. I mean, don't we have a bunch of cases saying you have to go through a process? Yes, Your Honor. I think, you know, if if if there was enough to substantiate it, maybe. But I think in this case, there were simply like nothing specific that that the immigration judge wanted or felt the need to have corroborated. It was the immigration judge's position and the board's finding that it just wasn't rising to the level of a substantial threat that, you know, merited that. Thank you. Thank you. A few points. Of course, the threats are hearsay. How else would how else could they be communicated? My client is in jail and his he's hearing about threats that are made through sometimes another detainee. He's hearing about threats made through the extensive family network. It's he's hearing about threats, but he hasn't actually received any, according to this record, has he? Well, he's received secondhand threats because number one hand threats or he's been informed that someone is making threats. There's there's a whole body of criminal law, for example, that especially with respect to to terroristic threats. Statutorily, the threat has to be communicated directly to the person threatened. Your honor, we hear about it. That's true as a matter of criminal law. But as a matter of asylum law, it's my client's reasonable perception of the threat as a perceived informant and the retribution. And I would just like it a threat. Well, that's my point. I'm not arguing criminal law. I'm suggesting to you that it may not be a threat if it has not been directed or if what the record shows is something that has not been directed to Mr. Martinez himself. It's been communicated to his sister that they're waiting for him in Guatemala. I don't know that in this record who communicated that. That was communicated by the barber. It was communicated by by Monroy. Not only that, Judge, if you look at the Myra's detailed affidavit again, 678 to 693 in the record, she details a number of instances where consistent with the fact that there's this Guatemalan community in Horsham and that they have interconnected communication through Facebook and whatever, it's known that and the experts testimony that they monitor detainees in jail and wait for them to come back. And I'd only like to point out that to Judge Phipps's point of safe relocation, the family is not living open and notoriously in Guatemala City. My client's testimony and Myra's testimony is that they move continually and they're basically prisoners in their own home. That's hardly safe relocation. And as you mentioned, to the extent that the reasonably founded fear is based on his perceived informant status, they are not perceived informants. I'd also like to say that although the social group is not in front of the court, if it were and he had to prove a one in ten chance of having a reasonable fear, one in ten chance of harm, then the fact that other family members who live six hours away in a city and who are hiding have not been harmed, would not defeat that reasonably based fear if it's a one in ten chance. We'd expect that there would be a certain amount of people that would not be harmed. But they're not even members of that group and they're in hiding. And as to the extent of the cooperation, let's not ignore exactly what happened here. If you look in our opening brief and footnote one of our opening brief at page 27. Mr. Sachs, you would concede, would you not, that there is a profound difference between cooperation with law enforcement, for example, that ultimately leads to testimony in court against someone, as opposed to an informant who simply provides what becomes derivative evidence that is useful to law enforcement? Judge, there was no testimony that was needed in this case. Aller Cohn ended up pleading guilty. Ask that. I'd agree with the court. I'd also agree with the court that an FBI agent doesn't send money. It is much more likely that if a witness testifies openly, people are going to know about it, right? Absolutely, sir. As opposed to having a confidential discussion with an investigator from a law enforcement entity and where information is provided and that information may or may not be useful to law enforcement. It was obviously useful to law enforcement because we have an FBI agent sending money to Sandra Martinez through her sister Myra in Guatemala and giving Sandra in Guatemala his cell phone number so that when she gets caught at the border on the way back. How does that affect Mr. Martinez? How does that help Mr. Martinez, the fact that money is sent to his sister? Because the cooperation, which is uncontroverted in the record, was a team effort on the part of Myra, the sister, and Petitioner. And first it was Myra who, through the restaurant where she was working, met the law enforcement people. And after a while, Myra was passing along information she gained from her brother. And the FBI said, we want to meet the brother. And then they continued meeting with the brother directly. And you cannot infer anything but the fact that when an FBI agent then helps Sandra to escape from the sociopath Guerra Nova, and then when Sandra is nabbed at the border, makes a phone call to border authorities, and then Sandra is then released. I don't think there's any other inference to make that that is a, in recognition of the cooperation that was given by the family in the form of Myra and Petitioner. So I think that that is an... All right. All right. Thank you, Mr. Sachs. Thank you. May I just say one further thing? No, you've had more than the five minutes. Thank you, sir. Thank you, sir. Thanks, Ms. Nardone. Thank you. Both of you will take the matter under advisement and we'll ask the clerk to adjourn the proceedings.